LINK: 5

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONALD G. NORRIS and PATRICK M. SUTTON,<br><br>    Plaintiffs,<br><br>vs.<br><br>ANDRE DREYFUSS,<br><br>    Defendant. | Case No. CV 08-03694-GAF (FFMx)<br><br>**ORDER & MEMORANDUM REGARDING DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

The present case arises out of a dispute involving real property in Costa Rica between Plaintiffs Donald Norris and Patrick Sutton, the purchasers, and Defendant Andre Dreyfuss. Plaintiffs have asserted claims for common law fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c). Plaintiffs allege they purchased beachfront property in Costa Rica in 2004 from a Costa Rican corporation formed by Defendant based on various misrepresentations made by Defendant and his agents regarding the property. Specifically, Plaintiffs claim they believed they were purchasing a subdivided parcel of land that was free and clear of any encumbrances, but instead, paid for land that is subject to a government lien and is not divisible.

At issue before the Court is Defendant's motion to dismiss. Defendant raises a number of grounds for dismissal, including lack of personal jurisdiction, forum non

conveniens, collateral estoppel, the parol evidence rule, and failure to plead fraud with particularity. The Court finds that (1) it may exercise personal jurisdiction over Defendant, (2) dismissal on forum non conveniens grounds is not proper, (3) it is not estopped from litigating the forum non conveniens issue, (4) the parol evidence rule is inapposite in fraudulent inducement cases such as this action, and (5) Plaintiffs have sufficiently stated claims upon which relief may be granted. Accordingly, Defendant's motion to dismiss is **DENIED** in its entirety.

## II. BACKGROUND

A. SUMMARY OF FACTS

Since 1977, the Costa Rican government has prohibited the construction of buildings upon beachfront property located in Playa Hermosa, Costa Rica absent municipal concessions that are, in essence, 20-year leases. (Compl. ¶ 3.) In 1980, an individual purported to acquire and register title to approximately 62 hectares of beachfront property located in Playa Hermosa by adverse possession ("Playa Hermosa Property"). (Id. ¶ 4.) In 1997, the Costa Rican government initiated a lawsuit to declare that individual's title null and void. (Id.) To deter fraudulent sales of the Playa Hermosa Property while the litigation was pending, a Costa Rican court placed what amounts to a lien thereon. (Id.)

In 2001, Defendant purchased approximately 19.5 hectares of the Playa Hermosa Property, through a Costa Rican corporation he had formed, with the intention of selling individual lots and bungalows. (Id. ¶ 5.) At the time he purchased the property, Defendant was informed of the existing lien on the property, that the pending litigation regarding ownership rights in the land would last six to ten years, and that he could not sell individual lots, houses, or bungalows unless purchasers agreed to buy them "as is." (Id.)

In February 2003, Defendant purported to subdivide his 19.5 hectares of the Playa Hermosa Property into two lots, and transferred each subdivided parcel to two other Costa Rican corporations he had also formed, Mundo Polar, S.A. and

2

1  Transportes Greco, S.A.  (Id. ¶ 6.)  Defendant then initiated a development project
2  called "Hermosa Paradise," and purported to further subdivide the two lots into 14
3  equal, undivided interests upon which he began building a total of 28 bungalows on
4  stilts.  (Id. ¶ 7.)  Defendant transferred many of these interests to other Costa Rican
5  corporations he had formed, including Villa Sal de Olivenza, S.A. ("Villa Sal").  (Id.)
6       Beginning in May 2003, Defendant spearheaded a marketing and advertising
7  campaign of the Hermosa Paradise bungalows from an office in Fort Lauderdale,
8  Florida.  (Id. ¶ 8.)  These efforts, which were largely aimed at California and Florida,
9  included the development and maintenance of an English language website and the
10 placement of advertisements in the Los Angeles Times.  (Id. ¶¶ 8–9.)  In November
11 2003, Norris viewed one of the fraudulent advertisements in the Los Angeles Times
12 and visited the Hermosa Paradise website.  (Id. ¶ 10.)  Plaintiffs allege that Defendant
13 fraudulently "failed and omitted to disclose" in the advertisements and on the website
14 the litigation in Costa Rica, the lien on the property, and the fact that the bungalows
15 actually rested on a single, non-subdivided parcel.  (Id. ¶¶ 9–10.)  The website and
16 advertisements also falsely declared that the purchase price of the bungalow included
17 the land upon which it was built.  (Id.; Norris Decl., Ex. 1 [Los Angeles Times
18 Advertisement]; Ex. 2 [Website Print-Out].)
19      In early December 2003, Norris and Douglas Galanter, who is not a party to
20 this action, traveled to Costa Rica to view the Hermosa Paradise bungalows.  (Compl.
21 ¶ 11.)  There, they met with Todd Cutter, a sales agent whom Defendant allegedly
22 "controlled and directed."  (Id. ¶ 18.)  Cutter explained that the sale of the property
23 would be effected through the purchase of 100 percent of the shares of a Costa Rican
24 corporation that owned whichever bungalow was purchased.  (Id. ¶ 11).  In addition,
25 Cutter falsely stated that the purchase prices of the bungalows included the parcel on
26 which they sat, and physically marked off the land surrounding the bungalow Norris
27
28

3

and Galanter were interested in purchasing. (Id.) During the visit, Cutter did not mention the pending litigation, the lien on the property, or the absence of actual subdivisions. (Id.)

On December 8, 2003, Cutter e-mailed Norris a "Purchase and Sale Agreement" ("PSA"), which provided that Mundo Polar, S.A. would transfer 100 percent of the shares of Villa Sal to Norris, Galanter and Sutton, each with a one-third interest therein. (Id. ¶ 14.) The PSA contained a mandatory arbitration provision that exempted fraud claims. (Hofeldt Decl., Ex. 3 [Third Amended Complaint/PSA] at 66.)

Before signing the PSA, Norris researched the Hermosa Paradise property on the Internet and learned that most of the Playa Hermosa Property could be acquired and used only pursuant to a concession agreement. (Compl. ¶ 13.) Accordingly, Norris e-mailed Cutter on December 11, 2003 regarding the status of the property. (Id.) Cutter called Norris the next day and assured him "that the property was fully titled and not concession property." (Id.) Then, on or about December 15, 2003, Norris, Galanter and Sutton signed the contract in California and wired $30,000 from their California banks to a Florida bank designated by Defendant. (Id. ¶ 14.)

The Hermosa Paradise website represented that, to facilitate the closing of purchases, purchasers would be provided with the names of eight independent and reputable real estate attorneys in Costa Rica. (Id. ¶ 16.) Cutter, however, provided Norris with contact information for only one attorney, Lydia Ardon, whom Plaintiffs allege "worked on behalf of Dreyfuss and his interests" (id.) and was also "directed and controlled" by Defendant (id. ¶ 18). Norris then independently investigated Ardon and learned that she was associated with a reputable law firm in Florida. (Id. ¶ 17.) Norris contacted Ardon on January 12, 2004 and asked her to confirm the title on the property. (Id.) Plaintiffs allege that Ardon falsely assured Norris that title to the property was "free and clear of any defects, liens and encumbrances." (Id.) In 2007, Galanter transferred his one-third interest in the property to Sutton. (Id. ¶ 19.)

4

**B. PROCEDURAL HISTORY**

On March 21, 2005, Plaintiffs and other California and Florida citizens filed a lawsuit against Defendant, Salem Law Group, P.A., Salem Saxon, P.A. and Lydia Ardon in Florida state court, alleging claims for, inter alia, negligent misrepresentation, fraudulent inducement, and violation of a Florida statute prohibiting racketeering activity. (Hofeldt Decl., Ex. 1 [Florida Complaint] at 3, 9–13.)

On September 4, 2007, Defendant filed a motion to dismiss on various grounds. (Mot. at 6.) After hearing oral argument from the parties, the Florida state court dismissed the action on the basis of forum non conveniens. (Hofeldt Decl., Ex. 5 [Florida Dismissal].) Without providing an opinion, the court concluded that "Costa Rica is a more convenient forum within which to litigate the dispute between . . . Norris, Galanter and Sutton and Defendant Dreyfuss." (Id. at 133–34.) Plaintiffs and Galanter appealed the state trial court's ruling, but ultimately withdrew their appeal and filed the present action in this Court.

At some point within the past several years, Hermosa Paradise Estates, S.A. appears to have sued Norris and Villa Sal in Costa Rica, alleging unpaid homeowners' association dues and defamation. (See Hernandez Decl. ¶¶ 3–4.) That litigation is currently pending. (See id. ¶ 3.) In addition, an entity known as Luna de Mar Negra apparently sued Norris and Villa Sal in Costa Rica after Defendant filed the present motion, alleging that Norris "intentionally disparag[ed] that entity by virtue of . . . having filed suit against [Defendant]" in the United States. (Norris Supp. Decl. ¶ 5.)

### III. DISCUSSION

**A. PERSONAL JURISDICTION**

"To survive a jurisdictional challenge on a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction where, as here, the district court [has] not hear[d] testimony or [made] findings of fact." Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 2002). Plaintiffs are "obligated to come forward with facts, by

1  affidavit or otherwise, supporting jurisdiction." Scott v. Breeland, 792 F.2d 925, 927
2  (9th Cir. 1986) (internal quotation marks omitted) (citing Amba Mktg. Sys., Inc. v.
3  Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)).
4       A court's exercise of personal jurisdiction over a non-resident defendant is
5  governed by constitutional principles of due process and the forum state's long-arm
6  jurisdiction statute. "Because California's long-arm jurisdictional statute is coextensive
7  with federal due process requirements, the jurisdictional analysis under state law and
8  federal due process are the same." Dole Food Co. v. Watts, 303 F.3d 1104, 1110
9  (9th Cir. 2002); see Cal. Code Civ. Proc. § 410.10. A court's exercise of personal
10 jurisdiction "comports with due process . . . [where] the defendant purposefully
11 established minimum contacts in the forum State," Asahi Metal Indus. Co. v. Superior
12 Court, 480 U.S. 102, 109 (1987), "such that the maintenance of the suit does not
13 offend traditional notions of fair play and substantial justice," Int'l Shoe Co. v.
14 Washington, 326 U.S. 310, 316 (1945). A court may exercise specific
15 jurisdiction—the type at issue here—over a non-resident defendant where (1) the non-
16 resident defendant has purposefully directed her activities to the forum state, (2) the
17 plaintiff's claim arises out of or relates to the defendant's forum-related activities, and
18 (3) the exercise of jurisdiction is reasonable. Watts, 303 F.3d at 1111 (citing Caruth v.
19 Int'l Psychoanalytical Ass'n, 59 F.3d 126, 127 (9th Cir. 1995)).

20     **1. PURPOSEFUL DIRECTION**

21      Under the "effects" test first enunciated by the Supreme Court in Calder v.
22 Jones, 465 U.S. 783, 788–89 (1984), a plaintiff may satisfy the "purposeful direction"
23 prong of the minimum contacts test by showing that the "defendant's actions outside
24 the forum state [were] directed at the forum." Schwarzenegger v. Fred Martin Motor
25 Co., 374 F.3d 797, 803 (9th Cir. 2004) (citing examples); see also Ziegler, 64 F.3d at
26 473 ("In tort cases . . . jurisdiction may attach if an out-of-forum defendant merely
27 engages in conduct aimed at, and having effect in, the situs state.") The Ninth Circuit
28 has described the effects test as follows:

6

> Calder stands for the proposition that purposeful availment is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state. . . . [Under] Calder, the effects test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

Schwarzenegger, 374 F.3d at 803 (internal quotation marks omitted) (citing Watts, 303 F.3d at 1111).

Here, Plaintiffs allege that, no later than May 2003, Defendant directed an advertising and marketing campaign to consumers in California and Florida. (Compl. ¶ 8.) As part of that campaign, Defendant and his agents placed advertisements in the Los Angeles Times and created and maintained a website accessible to California residents that disseminated information regarding the Hermosa Paradise bungalows. (Id. ¶¶ 9–10). The newspaper advertisements and the website both failed to indicate that the property was the subject of pending litigation and a government lien, and that the bungalows did not rest upon subdivided parcels. (Id. ¶¶ 9–10.) Moreover, both the advertisements and the website affirmatively represented that the purchase price of an individual bungalow included the parcel of land upon which it was located. (See Norris Decl., Ex. 1 [Los Angeles Times Advertisement]; Ex. 2 [Website Print-Out].) This conduct alone is sufficient to satisfy the requirements of the effects test.

### 2. FORUM-RELATED ACTIVITIES

The Ninth Circuit uses a "but for" test to determine whether a claim arises out of the non-resident defendant's forum-related activities. Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007) (citing Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001)). Here, Plaintiffs aver that Norris saw the Hermosa Paradise advertisement in the Los Angeles Times in November 2003, and that he visited the website thereafter for further inquiry. (See Compl. ¶ 10.) Thus, but for Defendant's forum-related activities, Plaintiffs would not have suffered their alleged injuries.

**3. REASONABLENESS**

The Ninth Circuit considers seven factors to determine whether the exercise of personal jurisdiction over a non-resident defendant comports with notions of fair play and substantive justice: "(1) the extent of the defendant['s] purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." Watts, 303 F.3d at 1114.

In the present case, Defendant purposefully engaged in an advertising and marketing campaign and maintained a website designed to induce California consumers to purchase real property in Costa Rica. Although Defendant is not a resident of California, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." Id. (internal quotation marks omitted) (quoting Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988)). Moreover, California has a strong interest in protecting its consumers from allegedly tortious activity. Cf. id. at 1115–16 ("California has a strong interest in providing a forum for its residents and citizens who are tortiously injured." (citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998))). These factors weigh in favor of exercising jurisdiction over Defendant, and any factors that might militate against personal jurisdiction do not meet Defendant's "heavy burden" of proving unreasonableness to defeat personal jurisdiction. See id. at 1117.

Finally, the Court is not persuaded by Defendant's contention that he cannot be haled to California in his personal capacity because he **personally** did not engage in the alleged activity giving rise to personal jurisdiction. (See Mot. at 14–16). While it may be true that an individual is not subject to personal jurisdiction based "on nothing

1  more than his corporate title," LeDuc v. Kentucky Cent. Life Ins. Co., 814 F. Supp.
2  820, 825 (N.D. Cal. 1992), the Supreme Court long ago rejected the notion that
3  "employees who act in their official capacity are somehow shielded from suit in their
4  individual capacity," Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).
5  Plaintiffs have sufficiently alleged that Defendant formed the various corporations
6  involved in Plaintiffs' transaction, and Defendant admitted during his deposition that he
7  was the president of those corporations when the alleged fraudulent activity occurred.
8  (Norris Decl., Ex. 6 [Dreyfuss Depo. Tr.] at 22.)  Defendant also conceded that he
9  hired the individual who designed the Hermosa Paradise website.  (Id.)  Moreover,
10 Plaintiffs have sufficiently pleaded that Defendant was actively engaged in attempting
11 to sell the Hermosa Paradise properties.  (See, e.g., id. at 24.)  Given these facts, this
12 Court is not willing to permit Defendant to hide behind a corporate veil to escape being
13 haled to California for his alleged wrongdoing.
14       For the foregoing reasons, the Court finds that it may properly exercise
15 personal jurisdiction over Defendant.  Defendant's motion to dismiss for lack of
16 personal jurisdiction is **DENIED**.

17 **B. FORUM NON CONVENIENS**

18       "A party moving to dismiss based on forum non conveniens bears the burden
19 of showing (1) that there is an adequate alternative forum, and (2) that the balance of
20 private and public interest factors favors dismissal."  Watts, 303 F.3d at 1118 (citing
21 Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142–43 (9th Cir. 2001)).  The Court
22 begins with a presumption in favor of the plaintiff's choice of forum.  See Koster v.
23 Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947); see also Contact Lumber Co.
24 v. P.T. Moges Shipping Co., 918 F.2d 1446, 1449 (9th Cir. 1990).  The presumption in
25 favor of the plaintiff's choice of forum may be rebutted through a "clear showing of
26 facts which either (1) establish such oppressiveness and vexation to a defendant as to
27 be out of all proportion to plaintiff's convenience, which may be shown to be slight or
28 nonexistent, or (2) make trial in the chosen forum inappropriate because of

considerations affecting the court's own administrative and legal problems." Koster, 330 U.S. at 524.

### 1. ADEQUATE ALTERNATIVE FORUM

A foreign forum is adequate when a plaintiff will not be deprived of all remedies or treated unfairly therein. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254–255 & n.22 (1981); see also Watts, 303 F.3d at 1118. Thus, the possibility of a change in law, even if it might disadvantage the plaintiff, "should ordinarily not be given conclusive or even substantial weight." Reyno, 454 U.S. at 247. However, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," a district court may conclude that dismissal on forum non conveniens grounds is inappropriate. See id. at 254.

The parties dispute the availability and adequacy of Costa Rica as an alternative forum. Defendant maintains that prior cases have already found Costa Rica to be an adequate alternative forum, and that the pending lawsuits against Norris and Villa Sal in Costa Rica demonstrate that Plaintiffs' claims may be adjudicated there. (Mot. at 10.) Plaintiffs rebut by arguing that Costa Rica is not an adequate alternative forum because "the law in that country divests Costa Rican courts of jurisdiction over a plaintiff's claims when the plaintiff has first filed his claim in another forum with competent jurisdiction." (Opp. at 9.) The Court need not resolve the issue of whether Costa Rica is an adequate alternative forum because, as explained below, dismissal on forum non conveniens grounds is not warranted based on the application of the public interest and private interest factors. Thus, the Court presumes for purposes of this motion that Costa Rica is an adequate alternative forum.

### 2. PRIVATE INTEREST FACTORS

The private interest factors relating to forum non conveniens include: (1) ease of access to sources of proof (i.e., the location of evidence), (2) the availability of compulsory process to obtain the attendance of hostile witnesses, (3) the cost of transporting friendly witnesses, and (4) other matters that might bear upon an efficient

1 and expeditious trial.  See Contact Lumber, 918 F.2d at 1451 (citing Gulf Oil, 330 U.S.
2 at 508).
3       A significant number of the percipient witnesses in this matter reside in
4 California and Texas.  (See Norris Decl. ¶ 14.)  Moreover, any documentary evidence
5 that might exist in Costa Rica can easily be supplied during discovery, as some of
6 those documents have been admitted as exhibits to declarations on the present
7 motion.  (See, e.g., Esquivel Decl., Ex. B [Certificate of Title].)  In addition, many of
8 Defendant's witnesses, including Cutter, Ardon, and Defendant's attorney, Rafael
9 Medaglia, are proficient in English and have lived or traveled in the United States in
10 the past.  (See Norris Decl. ¶ 16.)  Finally, the process of obtaining testimony in Costa
11 Rica from a witness who resides in the United States can be a tedious process, and
12 may take more than six months to accomplish.  (Hernandez Decl. ¶ 15.)
13       In light of these facts, the Court finds that the private interest factors weigh
14 heavily in Plaintiffs' favor, and militate in favor of denying Defendant's forum non
15 conveniens motion.
16       **3. PUBLIC INTEREST FACTORS**
17       The public interest factors relating to forum non conveniens "encompass court
18 congestion, the local interest in resolving the controversy, and the preference for
19 having a forum apply a law with which it is familiar."  Contact Lumber, 708 F.2d at
20 1452.  "In evaluating these factors, [the Court] must first decide how the underlying
21 issue ought to be conceptualized."  Id.
22       The underlying issue in this case is whether Defendant fraudulently induced
23 Plaintiffs to purchase the subject property.  Although court congestion is always an
24 important consideration for this Court, the local interest in resolving the present
25 controversy is substantial, given that Defendant purposefully directed allegedly false
26 information to California residents, causing them to spend hundreds of thousands of
27 dollars to purchase real property that is situated in a foreign country.  Furthermore, the
28 abundance of case law in the Ninth Circuit and California regarding fraudulent

1 inducement provides this Court with ample guidance as it weighs the pertinent
2 evidence in this case.
3      Accordingly, the Court finds that the public interest factors also weigh in favor
4 of denying Defendant's forum non conveniens motion. Defendant's forum non
5 conveniens motion is **DENIED**.

6 **C. ISSUE PRECLUSION**

7      Defendant's issue preclusion argument is also unavailing. "To foreclose
8 relitigation of an issue under collateral estoppel: (1) the issue at stake must be
9 identical to the one alleged in the prior litigation; (2) the issue must have been actually
10 litigated in the prior litigation; and (3) the determination of the issue in the prior
11 litigation must have been a critical and necessary part of the judgment in the earlier
12 action." Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir. 1992). "The
13 party asserting preclusion bears the burden of showing with clarity and certainty what
14 was determined by the prior judgment." Id. at 1321. This burden is satisfied where
15 "the record of the prior proceeding enable[s] the trial court to pinpoint the exact issues
16 previously litigated." United States v. Lasky, 600 F.2d 765, 769 (9th Cir. 1979).
17      Here, Defendant argues that this Court is foreclosed from litigating the present
18 action because a Florida state court has already determined that Costa Rica is a more
19 convenient forum. The Court disagrees. First, the record is devoid of any indication
20 that the Florida court considered the convenience of a California forum when it
21 decided the forum non conveniens issue before it. (See Hofeldt Decl., Ex. 5
22 [Dismissal].) In fact, the transcript of the oral argument pertaining to Defendant's
23 forum non conveniens motion in the Florida case suggests that Defendant was
24 focusing on the lack of a connection with Florida. (See, e.g., Hofeldt Decl., Ex. 4
25 [Transcript] at 106.) Defendant even admitted during the hearing that California may
26 be "the center of the relationship" among the parties. (Id. at 110.) Moreover,
27 determining whether a foreign forum is more convenient than a Florida forum is, in this
28 Court's view, a significantly different analysis than whether that same foreign forum is

1  more convenient than a California forum, especially where the plaintiffs in the case
2  are California residents and a number of events germane to the dispute occurred in
3  California. In other words, the issue of whether Costa Rica is a more convenient
4  forum than *California* under the circumstances of this case is not an issue that
5  another court has previously decided, and therefore, is an issue that this Court may
6  properly address.[1]

**D. PAROL EVIDENCE RULE**

Defendant also contends that any evidence of his or his agents' alleged misrepresentations and fraudulent omissions are barred by the parol evidence rule. The parol evidence rule provides that "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Code Civ. Proc. § 1856(a). However, section 1856(a) "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, . . . or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud." Id. § 1856(g).

In the present action, the PSA the parties signed contains a merger clause which provides that the PSA "embodies the entire agreement between the Parties with respect to the transactions contemplated, and there have been no agreements, representations or warranties other than those set forth in this Agreement and the documents referred here in [sic]." (Hofeldt Decl., Ex. 3 [Third Amended Complaint/PSA] at 66.) However, "[i]t is settled beyond doubt, manifestly on sound grounds of justice, that a seller cannot escape liability for his own fraud or false

---

[1] The Court declines to offer an opinion regarding the relatively unchartered territory of cross-jurisdictional preclusion relating to forum non conveniens dismissals. The Court notes, however, that the case Defendant cites in support of its position on this point, Villeda Aldana v. Fresh Del Monte Produce, Inc., 2007 WL 3054986 (S.D. Fla. October 16, 2007), involved a federal court *in Florida* finding that it was bound to the legal and factual findings of a *Florida* state court.

representations by the insertion of provisions" in a contract that "are to the effect that . . . the contract contains all the representations, promises and statements made by the seller or its agents which have induced the buyer to enter into the agreement of purchase." Simmons v. Ratterree Land Co., 17 P.2d 727, 728 (Cal. 1932). Moreover, "[f]raud in the inducement of a contract vitiates the entire agreement and destroys that consent which is essential to the existence of a valid contract." Id. (citing Cal. Code. Civ. Proc. § 1856). Accordingly, under California law, "evidence of fraudulent representations inducing the execution of a contract is admissible as an exception to the parole evidence rule." Buist v. C. Dudley De Velbiss Corp., 6 Cal. Rptr. 259, 263 (Ct. App. 1960) (citing Mooney v. Cyriacks, 195 P. 922, 926–27 (Cal. 1921)).

Here, Plaintiffs' "evidence" in opposition to Defendant's motion to dismiss goes to proving fraud in the inducement. Accordingly, the parol evidence rule is inapposite.

### E. FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

A court may dismiss a complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the alleged facts, even if true, will not entitle the plaintiff to relief on the theories asserted. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968–69 (2007); Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120 (9th Cir. 2007); see also Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996). When determining whether a plaintiff has sufficiently stated a claim, a court must accept all factual allegations pleaded in the complaint as true, and construe those facts and draw all reasonable inferences therefrom "in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996); see also Stoner, 502 F.3d at 1120. The court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). In assessing the factual allegations, the court may look to (1) the complaint and any documents attached thereto, Warren v. Fox Family Worldwide,

Inc., 328 F.3d 1136, 1141 n.5 (9th Cir. 2003); (2) materials that are properly subject to judicial notice under Rule 201 of the Federal Rules of Evidence, MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); and (3) evidence upon which the complaint "necessarily relies" so long as (a) the complaint refers to the document, (b) the document is central to the plaintiff's claim, and (c) no party questions the authenticity of the document, Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

### 1. ALLEGATIONS OF FRAUD

Rule 9(b) of the Federal Rules of Civil Procedure sets forth a heightened pleading standard for fraud claims, providing that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) applies to civil claims brought under RICO. Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065–66 (9th Cir. 2004). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see also Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) ("[Rule] 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.") Thus, to allege fraud with particularity, a plaintiff "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis and internal quotation marks omitted) (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994)).

As explained below, Plaintiffs in this case have pleaded sufficient facts to satisfy Rule 9(b)'s heightened pleading requirement by alleging specific facts regarding the time and place of the alleged misrepresentations and fraudulent

omissions, the specific content and nature of those statements and omissions, and the identities of the persons who made them.

### a. Plaintiffs' Common Law Misrepresentation Claim

Under California law, "[t]he elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 909 P.2d 981, 984–85 (Cal. 1996) (internal quotation marks omitted) (quoting 5 B.E. Witkin, Summary of California Law § 676 (9th ed. 1988)).

Here, Plaintiffs have averred enough facts with sufficient particularity to show that Defendant intentionally made material misrepresentations to induce Plaintiffs to purchase the subject property, and that Plaintiffs relied upon those misrepresentations in purchasing that property. Indeed, Plaintiffs' complaint and the declarations attached to Plaintiffs' opposition are filled with specific facts setting forth the who, what, when, where, and how of Defendant's alleged fraudulent activities. Thus, Plaintiffs have met the Rule 9(b) standard with regard to their common law claim of misrepresentation.

### b. Plaintiffs' RICO Claim

Whether Plaintiffs have pleaded sufficient facts to meet the heightened pleading requirement as to their RICO claim is a more difficult question. To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (internal quotation marks omitted) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). Under RICO, "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[T]his definition is not very demanding. A single 'individual' is an enterprise

under RICO. Similarly, a single 'partnership,' a single 'corporation,' a single 'association,' and a single 'other legal entity' are all enterprises." Id. at 548.

In the present case, Plaintiffs have pleaded sufficient facts of enterprise by alleging that Defendant spearheaded a fraudulent advertising and marketing campaign, that Defendant formed a host of corporations through which to transact business, and that Defendant hired a number of employees and cooperated with others to carry out a common scheme of defrauding California residents. The key question is thus whether Plaintiffs have sufficiently alleged a pattern of racketeering activity.

"Racketeering activity" means, inter alia, any act which is indictable under 18 U.S.C. § 1341 (relating to mail fraud) or § 1343 (relating to wire fraud). Plaintiffs claim that Defendant engaged in racketeering activity by "repeatedly and systematically communicat[ing] with [P]laintiffs and other similar victims via the mails, the telephone and the internet for the purpose of effectuating [Defendant]'s fraudulent scheme with respect to [the] sale of the 28 bungalows at Hermosa Paradise." (Compl. ¶ 27.) Defendant contends that this averment is not sufficient to meet Rule 9(b)'s heightened pleading standard. Defendant is mistaken.

"A wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." Odom, 486 F.3d at 554 (alteration and internal quotation marks omitted) (quoting Schreiber, 806 F.2d at 1400). Allegations of the first and third elements of wire fraud require only a generalized showing; only evidence of the fraud itself need be alleged with particularity. See id. To state a claim for mail fraud, Plaintiffs must show that Defendant (1) "devised a scheme or artifice to defraud," (2) "used the mails in furtherance of the scheme," and (3) "did so with the specific intent to deceive or defraud." Sun Sav. & Loan Ass'n v. Dierdorff, 825 F.2d 187, 195 (9th Cir. 1987) (citing Schreiber, 806 F.2d at 1399–1400).

Plaintiffs have not set forth facts showing that Defendant or his agents used the mails to communicate with Plaintiffs in furtherance of Defendant's allegedly fraudulent scheme. However, Plaintiffs have pleaded enough facts to withstand Defendant's motion to dismiss on Plaintiffs' wire fraud claim. First, Plaintiffs have pleaded enough facts to show that Defendant devised a scheme to defraud California purchasers of real property in Costa Rica, and that Defendant did so with the intent to deceive or defraud. Second, Plaintiffs have alleged at least several instances in which Defendant's agents communicated with Plaintiffs by phone or e-mail in furtherance of the fraudulent scheme. (See, e.g., Compl. ¶¶ 13–14.) Accordingly, Plaintiffs have asserted sufficient facts to establish with particularity a pattern of racketeering activity.

**2. AGENCY**

As Defendant repeatedly emphasizes throughout the present motion, the allegations in Plaintiffs' complaint provide that Defendant's agents committed many of the allegedly fraudulent acts. Thus, the Court must determine whether Plaintiffs have sufficiently pleaded agency relationships between Defendant and the various individuals identified by Plaintiffs as Defendant's agents.

As a preliminary matter, the Court finds that Plaintiffs need not allege agency with particularity, but must meet only the notice pleading standard set forth in Rule 8 and clarified in Twombly. This is because Rule 8 states the general rule for notice pleading and requires only a "short plain statement" showing entitlement to relief, unless a more specific rule, such as Rule 9(b), establishes a different standard. Defendant has not offered, and this Court has not found, any authority suggesting that agency must be pleaded with particularity in a fraud case. Accordingly, the Court applies the Rule 8 notice pleading standard, as that standard was interpreted in Twombly, to the question whether Plaintiffs have sufficiently pleaded agency.

After reviewing the pleadings and the related materials, the Court finds that Plaintiffs have averred enough facts relating to agency to adequately state both of their claims. For instance, the Plaintiffs plead that Cutter was a "sales agent," acting

under the control and direction of Dreyfuss (Compl. ¶ 18), who met Norris during his initial visit to Hermosa Paradise and regularly communicated with Norris to consummate the purchase of the subject property. Furthermore, Defendant admitted during his deposition that he made hiring decisions on behalf of his corporations (see, e.g., Norris Decl., Ex. 6 [Dreyfuss Depo. Tr.] at 22), that one such employee was Alberto Chavaria (id. at 23), that Chavaria reported to Cutter (id. at 26), and that Cutter reported to Chavaria (id.).[2] These allegations are sufficient to plead agency under Twombly. But because Cutter appears to have played a major role in inducing Plaintiffs to purchase the subject property, the factual allegations regarding Cutter are sufficient to state a claim for fraudulent inducement as to Defendant. Defendant's motion to dismiss for failure to state a claim is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that (1) it may exercise personal jurisdiction over Defendant, (2) it need not dismiss the case under forum non conveniens, (3) it is not collaterally estopped from adjudicating the forum non conveniens issue, (4) the parol evidence rule is inapplicable in the present case, and (5) Plaintiffs have sufficiently stated claims upon which relief may be granted. Accordingly, Defendant's motion to dismiss is **DENIED** in its entirety.

**IT IS SO ORDERED.**

DATED: November 11, 2008

_____
Judge Gary Allen Feess
United States District Court

---

[2] The Court also notes that the complaint alleges that Ardon "worked on behalf of Dreyfuss and his interests" and that she was also "directed and controlled" by Dreyfuss. (Compl. ¶ 18.) Those allegations are likewise adequate to establish an agency relationship under Rule 8.